Filed 9/27/13  P. v. Ribera CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G047383 |
| v. | (Super. Ct. No. 10SF0609) |
| LUIS ANGELEO CESPEDES RIBERA and EFREN IZQUIERDO, | O P I N I O N |
| Defendants and Appellants. | |

Appeals from judgments of the Superior Court of Orange County, Carla Singer, Judge.  Affirmed as modified as to Luis Angeleo Cespedes Ribera. Affirmed as to Efren Izquierdo.

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant Luis Angeleo Cespedes Ribera.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant Efren Izquierdo.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Theodore Cropley and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

\*      \*      \*

INTRODUCTION

Defendants Luis Angeleo Cespedes Ribera and Efren Izquierdo were convicted of conspiracy to carjack a vehicle, robbery, and street terrorism. On appeal, Ribera and Izquierdo raise several arguments challenging their convictions. Finding no merit in any of those arguments, we affirm the judgment as modified, to correct two clerical errors, as to Ribera, and we affirm the judgment as to Izquierdo.

First, both Ribera and Izquierdo argue there was not sufficient evidence to support the conviction for conspiracy to carjack. We conclude that the evidence and the reasonable inferences to be drawn from that evidence were more than sufficient. Second, Ribera argues there was not sufficient evidence to support his conviction for robbery. However, circumstantial evidence supports the jury's finding that Ribera was guilty of robbery as an aider and abettor.

Third, Ribera and Izquierdo argue the trial court erred by overruling their objections to opinion testimony by the prosecution's gang expert. Under recent California Supreme Court authority, the gang expert properly testified that if the actions were performed in the manner described in a hypothetical question, those actions would be gang related. Finally, we find no error in the jury instructions.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

On July 4, 2010, two brothers, Alejandro Lopez and Eloy Inclan, planned to drive from their apartment in Laguna Hills to watch fireworks in San Clemente. About 6:30 p.m., Inclan arrived home and parked his Cadillac Deville in his assigned spot in the apartment parking lot.[1] Lopez and Inclan then got in Lopez's father's Toyota Corolla,

---

[1] Inclan's Cadillac was "tricked out"; someone had tried to break into it two weeks before this incident.

2

which was parked in the same parking lot. Lopez and Inclan noticed two juvenile males standing nearby; the juveniles appeared to be watching them.

As Lopez drove past the juveniles, they whistled loudly at Lopez and Inclan. Lopez stopped the car. The juveniles walked up to the driver's side window and asked Lopez where he was from. When Lopez did not reply, the juveniles asked Lopez if he "banged." Lopez said he did not. One of the juveniles asked Lopez if he lived in the apartment complex. Lopez replied that he lived there, but he did not "bang." When Lopez said he was going to visit his family in San Clemente, one of the juveniles asked, "oh, you are from San Clemente?" Lopez responded that he was not from San Clemente, and the juvenile asked why he was "ranking out." Lopez and Inclan both stated they were not from any gang.

One of the juveniles said they were from the Family Mob gang, and claimed to control the Via Lomas apartment complex. He also said the Family Mob gang did not get along with San Clemente. Lopez reiterated that he just lived in the apartment complex and did not have problems with anyone. The juvenile continued to ask Lopez why he was "ranking out" and if he was scared.

At that point, a black Toyota Tundra pulled up next to the Corolla; Ribera was driving, Izquierdo was in the front passenger seat, and another male was in the back. All three got out of the Tundra. The juvenile who had been questioning Lopez told the new arrivals that Lopez and Inclan were from San Clemente. When Ribera and Izquierdo asked if Lopez and Inclan were from San Clemente, Lopez said, "no," explained they lived in the Via Lomas apartment complex, and said again that they did not want any problems. Inclan said they were going to San Clemente, but they did not "bang." One of the juveniles told Ribera and Izquierdo that Lopez was "ranking" and asked if he should do something about it. Izquierdo replied, "yeah, go for it."

The two juveniles opened the driver's side door of the Corolla and began punching Lopez. They could not pull him out of the car because he had his seatbelt on.

3

Ribera and Izquierdo opened the passenger side door and struggled with Inclan. As Izquierdo tried to take Inclan's keys, which were in his lap, Izquierdo tore the key fob for Inclan's Cadillac from the key chain; Izquierdo was not able to take the keys themselves from Inclan.

Lopez stepped on the gas and drove away while Inclan called 911. The Tundra followed them. When Lopez stopped at a traffic light, the Tundra pulled up alongside the Corolla. Ribera, Izquierdo, and the other male in the Tundra got out and approached the Corolla; Izquierdo flashed gang signs. Lopez saw several police vehicles at a nearby restaurant, so he drove over and explained to the officers what had happened. The police pursued and stopped the Tundra. The key fob from the Cadillac, which Izquierdo had taken from Inclan during the initial encounter, was found on the front passenger seat of the Tundra.

Ribera and Izquierdo were charged with conspiracy to commit carjacking of the Cadillac (Pen. Code, §§ 182, subd. (a)(1), 215, subd. (a)) (count 1); attempted carjacking of the Corolla (*id.*, §§ 664, subd. (a), 215, subd. (a)) (count 2); second degree robbery of the Cadillac's key fob (*id.*, §§ 211, 212.5, subd. (c)) (count 3); and street terrorism (*id.*, § 186.22, subd. (a)) (count 4). The information alleged, as a sentencing enhancement, that counts 1, 2, and 3 were committed for the benefit of, at the direction of, or in association with a criminal street gang. (*Id.*, § 186.22, subd. (b)(1).) It also alleged that Ribera was out on bail in a different case at the time these crimes were committed. (*Id.*, § 12022.1, subd. (b).) A jury convicted Ribera and Izquierdo on counts 1, 3, and 4, and found the gang sentencing enhancement true on counts 1 and 3. The jury found Ribera and Izquierdo not guilty on count 2. In a bifurcated proceeding, the trial court found the out-on-bail sentencing enhancement against Ribera to be true.

The trial court sentenced Izquierdo to 13 years in prison; Izquierdo received the midterm of three years on count 3, plus a consecutive 10-year term on the gang enhancement attendant to count 3. Sentences on counts 1 and 4 were imposed, and

4

execution of those sentences was stayed.  (Pen. Code, § 654.)  The court sentenced Ribera to 17 years in prison; Ribera received the upper term of five years on count 3, plus a consecutive 10-year term for the attendant gang sentencing enhancement, and a consecutive two-year term for the out-on-bail enhancement.  As with Izquierdo, the sentences on counts 1 and 4 were imposed and execution of those sentences was stayed.  Both Ribera and Izquierdo timely appealed.

DISCUSSION

I.

*SUFFICIENCY OF THE EVIDENCE OF CARJACKING*

"'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'  [Citation.]"  (*People v. Steele* (2002) 27 Cal.4th 1230, 1249.)  We presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence.  (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)  We may reverse for lack of substantial evidence only if "'upon no hypothesis whatever is there sufficient substantial evidence to support'" the conviction.  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Both Ribera and Izquierdo argue there was not sufficient evidence to support their convictions for conspiracy to carjack Inclan's Cadillac.[2]  "A conspiracy is an agreement by two or more persons to commit any crime.  [Citations.]  A conviction for conspiracy requires proof of four elements:  (1) an agreement between two or more people, (2) who have the specific intent to agree or conspire to commit an offense, (3) the

---

[2]  Count 1 charged Ribera and Izquierdo with conspiracy to carjack the Cadillac Deville.  Count 2 charged Ribera and Izquierdo with attempted carjacking of the Toyota Corolla.

specific intent to commit that offense, and (4) an overt act committed by one or more of the parties to the agreement for the purpose of carrying out the object of the conspiracy. [Citations.] [¶] The elements of conspiracy may be proven with circumstantial evidence, 'particularly when those circumstances are the defendant's carrying out the agreed-upon crime.' [Citations.] To prove an agreement, it is not necessary to establish the parties met and expressly agreed; rather, 'a criminal conspiracy may be shown by direct or circumstantial evidence that the parties positively or tacitly came to a mutual understanding to accomplish the act and unlawful design.' [Citation.]" (*People v. Vu* (2006) 143 Cal.App.4th 1009, 1024-1025.)

"'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." (Pen. Code, § 215, subd. (a).)

From the evidence and the reasonable inferences in favor of the evidence, a reasonable trier of fact could have found there was an agreement to take Inclan's Cadillac, and an overt act to further that agreement. It was reasonable for the jury to infer Ribera and Izquierdo wanted the keys to the car in addition to the key fob in order to complete the act of carjacking. Ribera argues that he and Izquierdo had no idea the key fob Izquierdo ripped from Inclan's key chain was for the Cadillac. There was evidence, however, that the juveniles had watched Inclan park the Cadillac before getting into the Corolla. It was reasonable to infer Ribera and Izquierdo knew that any keys or key fob in Inclan's possession would be those to the Cadillac.

Ribera and Izquierdo argue that even if there was an agreement to challenge, confront, or intimidate other gang members or members of the public, or to commit an assault, there was no agreement to carjack the Cadillac. Even if the primary

6

goal of the conspiracy was to further the activities of the gang, the gang expert testified that gang members use stolen cars to go for joyrides and to commit crimes. Therefore, an agreement to carjack the Cadillac from Inclan is completely consistent with a concurrent agreement to commit various acts of gang-related violence.

It is irrelevant that no statement expressing an intent to steal the Cadillac was made by Ribera, Izquierdo, or anyone else at the scene. (*In re Nathaniel C.* (1991) 228 Cal.App.3d 990, 999.) The acquittal of Ribera and Izquierdo on count 2—attempted carjacking of the Corolla—is also irrelevant. The evidence showed that the juveniles, not Ribera and Izquierdo, were attacking Lopez, and possibly trying to remove him from the car. It was entirely reasonable for the jury to have concluded that Ribera and Izquierdo did not have the mens rea or actus reus to support a conviction on count 2.

Ribera and Izquierdo also argue that there was insufficient evidence of a conspiracy to carjack the Cadillac because none of the five individuals present when Lopez and Inclan were confronted ever approached or tried to enter the Cadillac. However, a conviction for conspiracy does not require an attempt to complete the act.

Finally, Ribera argues the Cadillac was not in Inclan's "immediate presence" (Pen. Code, § 215, subd. (a)) when the key fob was taken from him. Forcing a carjacking victim to give up the keys to a vehicle, which is parked outside, is sufficient to support a carjacking conviction. (*People v. Hoard* (2002) 103 Cal.App.4th 599, 608-609.) Izquierdo's act of ripping the key fob from the key chain as he struggled to get the keys to the Cadillac from Inclan is not substantively different from taking the entire key chain from the victim.

## II.

### SUFFICIENCY OF THE EVIDENCE OF ROBBERY

Ribera argues there was not sufficient evidence to support his conviction for aiding and abetting the robbery committed by Izquierdo when he took the Cadillac's key fob from Inclan.

7

"'[A] person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime.' [Citation.]" (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 295-296.) Mere presence at the scene of a crime, or failure to prevent the crime from being committed, is insufficient to establish liability as an aider and abettor. (*People v. Richardson* (2008) 43 Cal.4th 959, 1024.) However, the factors to be considered in determining whether a defendant is liable as an aider and abettor "include presence at the scene of the crime, companionship, and conduct before and after the crime, including flight." (*People v. Haynes* (1998) 61 Cal.App.4th 1282, 1294.)

The direct and circumstantial evidence of Ribera's involvement in the robbery was strong. Both Ribera and Izquierdo asked if Lopez and Inclan were from San Clemente. Both Ribera and Izquierdo struggled with Inclan to get the keys to the Cadillac; Izquierdo pulled the key fob off the key chain during the struggle. Ribera was driving the Toyota Tundra in which Izquierdo arrived, and again drove the Tundra while chasing Lopez and Inclan after Izquierdo took Inclan's key fob. Ribera and Izquierdo were members of the same criminal street gang, and were backing each other up in the attack on Lopez and Inclan. We conclude there was substantial evidence supporting Ribera's conviction for aiding and abetting the robbery.

III.

*GANG EXPERT'S TESTIMONY*

Ribera and Izquierdo both argue that the trial court erred in overruling their objections to the gang expert's opinion testimony. "'"As a general rule, a trial court has wide discretion to admit or exclude expert testimony. [Citations.] An appellate court may not interfere with the exercise of that discretion unless it is clearly abused. [Citation.]"' [Citation.] In cases where a gang enhancement is alleged or a substantive

8

gang crime is charged, expert testimony regarding the 'culture, habits, and psychology of gangs' is generally permissible because these subjects are '"sufficiently beyond common experience that the opinion of an expert would assist the trier of fact."' [Citation.] For example, an expert may properly testify about the size, composition, or existence of a gang; 'motivation for a particular crime, generally retaliation or intimidation'; and 'whether and how a crime was committed to benefit or promote a gang.' [Citations.] [¶] An expert, however, may not testify that an individual had specific knowledge or possessed a specific intent. [Citation.]" (*People v. Garcia* (2007) 153 Cal.App.4th 1499, 1512-1513.)

Recently, in *People v. Vang* (2011) 52 Cal.4th 1038, the California Supreme Court reiterated the rules applicable to opinion testimony by gang expert witnesses, based on hypothetical questions. The Supreme Court confirmed that hypothetical questions posed to a gang expert must be based on what the evidence showed the defendant in the case had actually done. (*Id.* at p. 1046.) A gang expert witness may not, however, render an opinion as to whether a particular defendant's actions were *intended* to assist or benefit a gang, or were undertaken at the direction of a criminal street gang: "'"[O]pinions on guilt or innocence . . . are of no assistance to the trier of fact[ because] the trier of fact is as competent as the witness to weigh the evidence and draw a conclusion on the issue of guilt."'" [Citations.]" (*Id.* at p. 1048.) The key in determining whether the expert's opinion testimony is admissible or inadmissible is "the critical difference between an expert's expressing an opinion in response to a hypothetical question and the expert's expressing an opinion about the defendants themselves." (*Id.* at p. 1049.) In *People v. Vang*, the Supreme Court concluded, "the expert gave the opinion that an assault committed in the manner described in the hypothetical question would be gang related. The expert did *not* give an opinion on whether the defendants did commit an assault in that way, and thus did *not* give an opinion on how the jury should decide the case." (*Ibid.*)

9

The expert opinion testimony in this case is set forth as follows:

"Q  I would like to give you a set of hypothetical facts, Deputy Mitry, and I want you to assume some facts, and then I'm going to ask you your opinion regarding those facts.

"I would like you to assume that—I'm going to call him John Doe One and John Doe Two are in their apartment parking lot where they have a designated parking space.

"I would like you to assume that when they are in the parking lot, they notice two male juveniles who are watching them from across the parking lot.

"I would like you to assume that John Doe One and Two get into their car and start to drive out of their parking lot when they hear two loud whistles.

"I would like you to assume that John Doe One and Two stop the vehicle that they are in near where the two juveniles are standing.

"I would like you to assume that one of the juveniles asks John Doe One and Two 'where are you from?'

"I would like you to assume that they reply that they are from San Clemente, and then go on to explain that they grew up in the City of San Clemente and that they are on their way to that city.

"I would like you to assume that the two juveniles responded at some point that they were from Family Mob.  And I would like you to assume that a black Toyota truck pulls up next to John Doe's vehicle.  Three males exit the Toyota truck, and go to the passenger side of the John Doe vehicle, and confront the passenger that's seated in the passenger seat.

"I would like you to assume that one of the juveniles asks the Toyota or asks the black truck 'should I do it?'

"I would like you to assume that one of the persons responds that he should 'go for it.'

"I would like you to assume that juvenile one and two, who are standing by the driver's door of John Doe's car, open that car door and confront John Doe One and try to pull him from the driver's seat.

"I would like you to assume at the same time one of the males standing on the passenger side of the Toyota grabs a set of keys that are on the lap of John Doe Two, and they engage in a struggle over the set of keys.

"I would like you to assume that John Doe manages to accelerate the vehicle and getaway [*sic*] from the individuals.

"I would like you to assume that the three males and the two juveniles get back into the Toyota truck and follow John Doe's vehicle. At one point getting next to the vehicle and throwing hand signs towards John Doe vehicle.

"I will like you to assume that John Doe vehicle contacts some police that are nearby.

"And I would like you to assume that the police stop the black vehicle shortly thereafter.

"With those facts in mind, do you have an opinion as to whether or not those acts were committed for the benefit of, or in association with, or at the direction of Family Mob criminal street gang?

"[Ribera's counsel]: Objection, Your Honor. Hearsay. Relevance. I think it's an improper opinion as to the specific intent of any of—of Mr. Ribera.

"[Izquierdo's counsel]: Join for Mr. Izquierdo, Your Honor, on the objection.

"The Court: Overruled. [¶] You may answer.

"The witness: Yes.

"By [the deputy district attorney]:

"Q What is your opinion?

11

"A  My opinion is this crime, based on your hypothetical, was done for the benefit of, and in association, and at the direction of Family Mob criminal street gang.

"Q  Let's start with 'in association.'  And what do you mean by 'in association'?

"A  In your hypothetical, you mentioned that at least two of the subjects are members or associates of the Family Mob criminal street gang.

"Q  And so they would . . . be in association with each other?

"A  Yes, ma'am.

"Q  Okay.  And what about 'for the benefit of.'  How would those acts benefit Family Mob?

"A  A crime such as this or, you know, a robbery or carjacking, attempting to carjack a car—

"[Izquierdo's counsel]:  Objection.  Facts not in evidence.  There was no mention of carjacking or robbery.

"The Court:  You seem to be objecting to the answer rather than the question.  Your objection is overruled.  [¶] You can finish your answer.  [¶] Do you need the question again?

"The witness:  Yes, ma'am.  [¶] (Record read.)

"The Court:  You may answer.

"The witness:  Crimes such as this would benefit a gang in several ways.  It goes back to the term we were just talking about joyriding where the gang members can take the car and basically drive around in it.  And they also—and in doing that, they just disrespected what they believe is a rival gang member.

"Also by taking this vehicle or attempting to take a vehicle, they have shown—they are showing disrespect to the rival gang member and showing their power within the community.

"[Izquierdo's counsel]: Objection. Move to strike, Your Honor. There was no mention of taking a vehicle in the hypothetical. There was no mention of joyriding or carjacking or robbery.

"The Court: I don't see any legal grounds to strike. Your motion is denied."

Ribera and Izquierdo are correct in noting that carjacking, robbery, and joyriding were not mentioned in the prosecutor's hypothetical. But the expert did not render an opinion whether Ribera and Izquierdo committed carjacking or robbery, and did not opine on how the jury should decide the case. The expert's opinion was that the actions done in the manner described in the hypothetical would be gang related because they could have been done for purposes of joyriding, carjacking, or robbery, any of which would have benefitted the gang. The trial court did not err in overruling the objection to the expert's opinion testimony.

## IV.

### CALCRIM NO. 417

Ribera argues the trial court incorrectly instructed the jury with CALCRIM No. 417 on count 1—the claim of conspiracy to carjack the Cadillac—requiring reversal of his conviction on that count. The Attorney General counters that the argument has been forfeited because Ribera did not object to the instruction in the trial court. Generally, if a defendant does not object to a jury instruction that is "'"'correct in law and responsive to the evidence,'"'" he or she may not challenge it on appeal. (*People v. Castaneda* (2011) 51 Cal.4th 1292, 1348.) The issue here is whether CALCRIM No. 417 was responsive to the evidence. The Bench Notes to CALCRIM No. 417 provide that the instruction should be given "when there is an issue whether the defendant is liable for the acts of coconspirators," citing *People v. Flores* (1992) 7 Cal.App.4th 1350, 1363. (Judicial Council of Cal., Crim. Jury Instns. (2013) Bench Notes to CALCRIM No. 417, p. 182.) Here, because Izquierdo took the key fob from

13

Inclan, Ribera could have raised an argument that he was not liable for the act of his coconspirator.

If we were to reach the merits of the argument, we would conclude the trial court did not commit prejudicial error by instructing the jury with CALCRIM No. 417. (*People v. Frye* (1998) 18 Cal.4th 894, 957.)  We review the claim of an erroneous jury instruction independently, considering the instructions as a whole and determining whether it is reasonably likely the challenged instruction confused or misled the jury. (*People v. Rundle* (2008) 43 Cal.4th 76, 149.)

The jury was instructed with CALCRIM No. 417, as follows:  "A member of a conspiracy is criminally responsible for the crimes that he or she conspires to commit, . . . no matter which members of the conspiracy commit[] a crime.  [¶] A member of a conspiracy is also criminally responsible for any act of any member of the conspiracy if that act is done to further the conspiracy and that act is a natural and probable consequence of the common plan or design of the conspiracy.  This rule applies even if the act was not intended as part of the original plan.  Under this rule, a defendant who is a member of the conspiracy does not need to be present at the time of the act.  [¶] A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes.  In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence.  [¶] A member of a conspiracy is not criminally responsible for the act of another member if that act does not further the common plan or is not a natural and probable consequence of the common plan.  [¶] To prove that the defendant is guilty of the crime charged in count 1, the People must prove that:  [¶] One. The defendant conspired to commit carjacking.  [¶] Two. A member of the conspiracy committed an attempted carjacking or robbery to further the conspiracy; [¶] and [¶] Three. Attempted carjacking or robbery was a natural and probable consequence of the common plan or design of the crime that the defendant conspired to commit.  [¶] The defendant is not responsible for the acts of

14

another person who was not a member of the conspiracy even if the acts of the other person helped accomplish the goal of the conspiracy. [¶] A conspiracy member is not responsible for the acts of other conspiracy members that are done after the goal of the conspiracy has been accomplished."

The prosecutor did not rely on the natural and probable consequences doctrine. Ribera argues that by nevertheless giving the instruction, the trial court caused the jury to be hopelessly confused as to the applicable law on the crime of conspiracy to carjack, given the facts of the case.

The jury was correctly instructed with CALCRIM No. 415, which explained the elements of the conspiracy charge in count 1. Although CALCRIM No. 417 addressed a legal issue that was not argued to the jury—the natural and probable consequences doctrine's application to liability for conspiracy—it did not misstate the law. Ribera argues the instruction permitted the jury to find him guilty of conspiracy to commit carjacking based on (1) Izquierdo's plan and agreement with the juveniles who initially accosted Lopez and Inclan and (2) Izquierdo's commission of a robbery of the car key fob, when (3) robbery was a natural and probable consequence of the conspiracy to commit carjacking. We find nothing in the record, or in our reading of the law, that would support this argument.

V.

*ABSTRACT OF JUDGMENT*

Ribera argues that the abstract of judgment should be corrected to reflect the correct name of Ribera's trial counsel. The Attorney General does not object to the requested correction.

Additionally, the abstract of judgment for Ribera fails to reflect his correct sentence, in that it does not state that the execution of the sentence on count 4 is stayed pursuant to Penal Code section 654. We will order the abstract of judgment amended to reflect the correct terms of Ribera's sentence.

15

DISPOSITION

The judgment as to Izquierdo is affirmed.  The judgment as to Ribera is affirmed as modified.  We direct the trial court to prepare an amended abstract of judgment for Ribera reflecting (1) the correct name of Ribera's trial counsel, Stephen Michael Rios, Retained Attorney, and (2) the Penal Code section 654 stay of Ribera's sentence on count 4, and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


FYBEL, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.

16